UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

TRACI POWELL,

                Plaintiff,

     -against-

MERRICK ACADEMY CHARTER SCHOOL
and VICTORY EDUCATION PARTNERS,

                Defendants.
--------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**16-CV-5315 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Traci Powell, the former Director of Operations for the Merrick Academy Charter School in Queens ("Merrick") brings this suit alleging that her termination from that position was motivated by disability discrimination and unlawful retaliatory animus, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). (Compl. (Dkt. 1) ¶¶ 37-58.) Merrick has moved to dismiss the Complaint. (Mot. to Dismiss (Dkt. 13); Mem. in Supp. of Mot. to Dismiss ("Def. Mem.") (Dkt. 13-2).) For the reasons that follow, Merrick's motion is GRANTED.[1]

---

[1] It appears from the docket that Plaintiff has not served process upon defendant Victory Education Partners ("Victory"), despite the court's reminder that she must do so. (Jan. 26, 2017, Hr'g Tr. (Dkt. Number Pending); Jan. 26, 2017, Min. Entry.) See Fed. R. Civ. P. 4(m). Merrick also contends that Plaintiff has not alleged any facts supporting an inference that Victory, in particular, discriminated against her, either in the conditions of her employment or in firing her. (Def. Mem. at 16 n.9.) Plaintiff has not responded to this argument (cf. Pl. Opp'n to Mot. to Dismiss (Dkt. 15)) and thus has waived her opportunity to do so. See Frey v. Bekins Van Lines, Inc., 748 F. Supp. 2d 176, 182 (E.D.N.Y. 2010). Accordingly, all claims against Victory are dismissed without prejudice.

## I. BACKGROUND

The following summary is largely taken from the Complaint, the well-pleaded factual allegations of which are assumed to be true for purposes of a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Plaintiff's termination from Merrick was the end of a twelve-year-long relationship with the school. She began volunteering at Merrick in 2002 and served as a member of the school's board of trustees (the "Board") from 2006 to 2012. (Compl. ¶ 16.) In 2012, Plaintiff left her job as a human resources specialist for the City University of New York to serve as Merrick's Director of Operations. (Id.) In this position, she supervised eight or nine employees, reported directly to the Board, and was responsible for all non-instructional matters at the school, including human resources, facilities, transportation and lunch services, and general accounting. (Id. ¶¶ 16-17.) Merrick had struggled to fill this position, cycling through six directors in the two years before Plaintiff was hired. (Id. ¶ 21.)

Plaintiff's tenure as Director of Operations was rocky almost from the start. Although "[i]nitially, there was great camaraderie" among Merrick's administrators, their esprit de corps soon degenerated into acrimony and infighting. (Id. ¶ 19.) "Shortly after the start of the [2012-13] academic year," Plaintiff began to butt heads with Tonya Johnson, Merrick's Director of Curriculum and Instruction. (Id. ¶¶ 19-20.) According to Plaintiff, Johnson fostered a "divisive" and cliquish working environment (id. ¶¶ 19, 21, 23, 26); manipulated the Board into appointing her as principal (id. ¶ 21); undermined Plaintiff by berating Operations staff and hiring employees outside of formal channels (id. ¶¶ 20, 29); was sometimes absent from school, failed to "clock in," or "access[ed] the building through an unauthorized access point" (id. ¶ 27); and squandered or misappropriated school resources by, among other things, hiring herself a leadership coach at a cost of $150,000 per year, submitting excessive reimbursement requests,

and requiring her assistant to help her with personal chores (<u>id.</u> ¶¶ 19, 27, 32). Plaintiff lodges similar allegations against Merrick's Arts Education Manager, Valerie Williams. (<u>Id.</u> ¶¶ 19-21, 27.)

Plaintiff also appears to have clashed with several Board members about her job and Merrick's direction. Plaintiff alleges that Human Resources and Operations Committee Chair Michael Zampella publicly undermined her and interfered in day-to-day Operations decisions. (<u>Id.</u> ¶ 22.) Board member Monica Perry allegedly "berated Plaintiff[,] . . . suggested that she was incompetent," and forced her "to work on issues that solely affected Johnson." (<u>Id.</u> ¶ 23.) Furthermore, in March 2013, Board chair Gerald Karikari allegedly decided to hire a new employee, ostensibly as a "second in command to support Plaintiff," although this candidate "held a higher title than Plaintiff" at the charter school at which she worked. (<u>Id.</u> ¶ 27.) Plaintiff "questioned" whether she was being replaced and appears to have expressed her concerns about the candidate to Johnson and the Board. (<u>Id.</u>)

Plaintiff's working relationship with Merrick continued to deteriorate through the spring of 2013. In May 2013, the Board restructured Merrick's administration, promoting Johnson to principal and changing Plaintiff's reporting line so that she would report to Johnson rather than directly to the Board. (<u>Id.</u> ¶¶ 26, 29.) Around this time, Plaintiff fired two of her subordinates, supposedly because they "failed to meet the standards that [she] set for the department and . . . kept brewing trouble in the department." (<u>Id.</u> ¶ 29.) One of those subordinates, an "F. Winslow," challenged that decision before the Board, complaining "that there was a major glitch in the school's [admissions] lottery," "that Plaintiff told her to do something wrong," and that, "when she questioned Plaintiff, Plaintiff informed her that 'there have to be casualties of war.'" (<u>Id.</u> ¶ 30.) The Board called in outside counsel to investigate these allegations. (<u>Id.</u>) Before the

results of the investigation were complete, the Board reinstated Winslow, this time as one of Johnson's reports. (Id.)

These conflicts boiled over in the fall of 2013. In August 2013, Johnson's assistant, a "Ms. Dhall," complained to Plaintiff that Johnson made her perform work unrelated to Merrick and that Johnson had made derogatory remarks about Plaintiff and certain board members. (Id. ¶ 32.) Plaintiff relayed those remarks to Karikari, who reassigned Dhall to work for Plaintiff. (Id.) Plaintiff seems to have opposed this move, complaining that Dhall "couldn't be disciplined or reset" and was "manipulative." (Id.) Later in August, Plaintiff gave her subordinates raises, supposedly in accordance with the school budget, but without the Board's express approval. (Id. ¶ 33.) The Board ordered Plaintiff to revoke those raises. (Id.)

On September 3, 2013, following a physical exam, Plaintiff was diagnosed with diabetes. (Id. ¶ 34). She was referred to a mental health provider and several other medical providers, with one doctor ultimately "ordering a modified work schedule (work 3 days weekly) with a goal to reduce the stress and to develop healthier living habits." (Id.) Plaintiff alleges that she promptly faxed her doctor's note to Karikari and to Victory's human resources department, the latter of which provided her with Family Medical Leave Act forms, which she completed and returned on an unspecified later date. (Id.) On September 24, apparently due to medical reasons, Plaintiff missed an "explosive" Board meeting in which an attempt was made to oust Karikari as Board chair. Three days later, an unnamed "state entity" received an anonymous letter from "concerned staff and parents" accusing Plaintiff of stealing tests, "avoiding questions, [and] holding double financial books[] related to all of the cleaning staff." (Id.)

In October 1, 2013, Karikari called Plaintiff and Johnson to a meeting at which he "eventually disclosed that he wanted both of them to leave." (Id. ¶ 35; Pl. Mem. in Opp'n to

Mot. to Dismiss ("Pl. Opp'n") (Dkt. 15) at 13.) Karikari offered Plaintiff a severance package, but Merrick and Plaintiff were unable to come to mutually satisfactory terms. (Id.) Plaintiff officially left Merrick on November 1, 2013. (Pl. Opp'n at 6.)

Plaintiff subsequently filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that her termination was discriminatory and retaliatory. (Def. Mem. at 13.) She received a right-to-sue letter on or about June 22, 2016. (Id.) On September 23, 2016, Plaintiff filed this suit, which alleges that Merrick unlawfully discriminated against her on the basis of her diabetes, in violation of the ADA, NYSHRL, and NYCHRL, and that it retaliated against her for "expressing concerns about unethical and/or illegal activity in violation of her rights under Title VII of the Civil Rights Act and for taking action in firing an employee who was not performing her job functions effectively." (Compl. ¶ 36.)

## II.    LEGAL STANDARD

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief." Kneitel v. City of New York, No. 15-CV-6942 (NGG), 2017 WL 5508367, at *3 (E.D.N.Y. Nov. 15, 2017) (citing Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007)). To survive a motion to dismiss, a plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Determining "plausibility" is a "context-specific task," id. at 679, which "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable," L-7 Designs, Inc.

5

v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011). The court must accept as true any well-pleaded factual allegations in the complaint, but it need not accept "[t]hreadbare recitals of the elements of a cause of action" or "mere conclusory statements." Iqbal, 556 U.S. at 678.

## III. DISCUSSION

The court first addresses the scope of the record before it, then turns to Merrick's arguments as to why the Complaint should be dismissed.

### A. Extrinsic Documents

When considering a Rule 12(b)(6) motion to dismiss, the court may consider only limited materials, including "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The court may also consider documents that are "integral" to the complaint, in that the complaint "relies heavily upon [their] terms and effect," so long as these documents are undisputedly authentic and accurate. Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). When a party introduces extrinsic materials on a motion to dismiss, the court must either exclude those materials and decide the motion on the basis of the pleadings before it or convert the motion into one for summary judgment and provide all parties with the opportunity to present additional evidence. Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).

Rather than simply identifying deficiencies in the Complaint, Merrick attaches several additional documents to its Motion to Dismiss: (1) the Merrick Employee Manual (Dkt. 13-3 at ECF p.1); (2) Plaintiff's employment contract (Dkt. 13-3 at ECF p.19); (3) an undated job description for the Director of Operations position held by Plaintiff (Dkt. 13-4 at ECF p.1); (4) draft and final versions of a memorandum, authored by Merrick's outside counsel, "summariz[ing] . . . findings in connection with [counsel's] investigation of the Enrollment

6

Lottery process at Merrick Academy for the 2013-2014 school year" (Dkt. 13-4 at ECF pp.6, 12); and (5) a letter, dated October 10, 2013, from Plaintiff to Karikari proposing terms for her severance package (Dkt. 13-4 at ECF p.15).

These documents are not properly before the court. Plaintiff attached none of these documents to her Complaint, and the Complaint does not incorporate any of these materials by reference. Although the Complaint mentions Plaintiff's responsibilities as Director of Operations (Compl. ¶ 16), the investigation conducted by Merrick's outside counsel (id. ¶ 30), and the fact that she proposed terms for her severance package (id. ¶ 35), these allusions are insufficient to incorporate the documents in question by reference. "Clearly, not every document referred to in a complaint may be considered incorporated by reference . . . ." Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988). If "limited quotation does not constitute incorporation by reference," Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985), the court cannot see how the Complaint's passing references to the subject matter also addressed by these documents is sufficient to incorporate them by reference.

Nor does the Complaint "rel[y] heavily on [these documents'] terms and effect." See DiFolco, 622 F.3d at 111. This exception to the rule that courts ordinarily should not consider extrinsic materials on a motion to dismiss generally applies when "the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006). No such circumstances are present here, as Plaintiff has not sued to enforce the terms of her employment contract (or any other extrinsic agreement), but instead to challenge her termination

as motivated by disability discrimination and unlawful retaliatory animus. Nothing in her Complaint relies—let alone "heavily"—on the "terms and effect" of these documents.

Instead, Merrick's Memorandum in Support of its Motion to Dismiss makes clear that it adduces these documents to show that Plaintiff was an at-will employee (Def. Mem. at 6-9) and to refute her allegations about when it decided to fire her and for what reasons (id. at 12-13, 18-20). But whether Plaintiff was an at-will employee is irrelevant: Disability discrimination is unlawful regardless of whether the victim was employed at will. See Simon v. Mfts. Hanover Tr. Co., 849 F. Supp. 880, 883 (S.D.N.Y. 1994). To the extent that Merrick seeks to use these extrinsic materials to rebut the allegations in the Complaint, it may not do so on a motion to dismiss: "The fact that evidence is inconsistent with a complaint's allegation is not a reason to consider it on a motion to dismiss." Gonzalez v. City of New York, No. 14-CV-7721 (LGS), 2015 WL 6873451, at *5 (S.D.N.Y. Nov. 9, 2015).

Accordingly, for purposes of analyzing Merrick's Motion to Dismiss, the court will disregard these extrinsic materials and limit its review to the Complaint.

**B. Federal Claims**

With the record before it thus established, the court turns to the merits of Plaintiff's claims, beginning with her claims arising under federal law. Merrick advances four arguments for why the court should dismiss these claims. (Def. Mem. at 4.) First, it contends that Plaintiff has not adequately alleged that she has a "disability" for purposes of the ADA. (Id. at 15-17.) Second, it avers that it fired her for numerous legitimate, nondiscriminatory reasons and had already decided to fire her before it learned that she was diabetic and had requested a reduced work schedule. (Id. at 18-20.) Third, it argues that, to the extent Plaintiff claims that Defendants subjected her to a hostile work environment, the Complaint fails to allege "severe or pervasive" discriminatory mistreatment. (Id. at 20-21.) Finally, it contends that Plaintiff's Title VII

retaliation claim is legally inadequate because Plaintiff has not alleged that she engaged in protected activity. (Id. at 21-23.) The court rejects Merrick's arguments that Plaintiff has failed to allege that she has a disability within the meaning of the ADA or that she engaged in protected activity within the meaning of Title VII. The court agrees, however, that Plaintiff has failed to allege sufficient factual matter to raise a plausible inference that she was fired because of unlawful discriminatory or retaliatory animus.

    1. ADA

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The elements of a [disability discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." Davis v. N.Y.C. Dep't of Educ., 804 F.3d 231, 235 (2d Cir. 2015). "While a plaintiff is not required to make out a prima facie case in order to survive a motion to dismiss, the elements of the claim are instructive in analyzing whether a plaintiff has alleged sufficient facts giving rise to a claim." Stinnett v. Delta Air Lines, Inc., — F. Supp. 3d —, 2017 WL 4443520, at *8 (E.D.N.Y. 2017).

Merrick contends that the Complaint is deficient with respect to the second and fifth elements of a disability-discrimination claim under the ADA: disability and causation. (Def. Mem. at 15-20.) The court addresses each contention in turn.

*a. Disability*

To state a claim for disability discrimination under the ADA, a plaintiff must allege that

she had a "disability"—that is, that she had, among other things, "a physical or mental

impairment that substantially limits one or more [of her] major life activities." 42 U.S.C.

§ 12102(1)(A). As amended by Section 4(a) of the ADA Amendments Act of 2008, Pub. L. 110-

325, 122 Stat. 3553, 3555 (the "ADAAA"), the ADA defines "major life activities" to include

not only such tasks as seeing, walking, and working, but also "major bodily functions." 42

U.S.C. § 12102(2). "Major bodily functions," in turn, are defined to include "functions of the

immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory,

circulatory, endocrine, and reproductive functions." Id. § 12102(2)(B) (emphasis added). To

assess whether a disability "substantially limits" one of these "major life activities," courts may

no longer consider "the ameliorative effects of mitigating measures" such as "medication,

medical supplies" or "reasonable accommodations." Id. § 12102(4)(E)(i)(I), (III).[2]

Plaintiff's allegations that she was diagnosed with diabetes and that a doctor ordered to

reduce her work schedule (Compl. ¶ 34) support a reasonable inference that she has a "disability"

within the meaning of the ADA. "[D]iabetes . . . is by definition a disease which impacts the

functioning of the endocrine system." Willoughby v. Conn. Container Corp., No. 3:11-CV-992

(CSH), 2013 WL 6198210, at *9 (D. Conn. Nov. 27, 2013). Accordingly, as EEOC regulations

have recognized, diabetes will, "as a factual matter, virtually always be found to impose a

substantial limitation on a major life activity." 29 C.F.R. § 1630.2(j)(3)(ii); see also id.

§ 1630.2(j)(3)(iii) ("[I]t should easily be concluded that the following types of impairments will,

---

[2] The ADAAA expressly superseded the Supreme Court's decision in Sutton v. United Air Lines, Inc., 527 U.S. 471, 475 (1999), that, under the ADA, "the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment." See ADAAA § 2(b)(2), 122 Stat. at 3554.

at a minimum, substantially limit the major life activities indicated: . . . diabetes substantially limits endocrine function . . . ."). Since the enactment of the ADAAA, numerous courts have reached the conclusion that a plaintiff's allegations that she has been diagnosed with, and treated for, diabetes, are sufficient at the pleading stage to raise a plausible inference that she has a "disability" under the ADA. See Hensel v. City of Utica, No. 6:15-CV-374 (LEK), 2017 WL 2589355, at *3-4 (N.D.N.Y. June 14, 2017) (collecting cases). Plaintiff's allegations that her doctor diagnosed her with diabetes and ordered her to reduce her work schedule are sufficient to raise a reasonable inference that she has an impairment that substantially limits the functioning of her endocrine system, and thus that she has a disability for purposes of the ADA.

Merrick's contentions to the contrary are unpersuasive. Relying entirely on stale, pre-ADAAA case law, Merrick first argues that Plaintiff has not adequately pleaded that she has a "disability" because she "offers no additional factual allegations that indicate what impact, if any, the diagnos[i]s had on her life and/or her ability to perform the duties and responsibilities of the position." (Def. Mem. at 17.) As the court has discussed, however, Plaintiff need not allege that her diabetes affected her day-to-day activities or work responsibilities, so long as she has alleged that the diabetes substantially limits the functioning of her endocrine system—which, almost by definition, it does. See 42 U.S.C. § 12102(4)(C).

Next, Merrick argues that Plaintiff has not sufficiently pleaded that she was disabled because she requested a modified work schedule to help her cope with "job-related stress," not to address her diabetes. (Def. Mem. at 16.) While the Complaint is hardly a model of clarity in this regard, the court disagrees with Merrick's reading. In relevant part, Plaintiff alleges as follows:

> On September 3, 2013, Plaintiff had a complete physical that resulted in a diagnosis that Plaintiff was a diabetic. Plaintiff was referred to meet with a Mental Health provider weekly and during the next several weeks referred to several medical providers. The

> end of September resulted in the doctor ordering a modified work
> schedule (work 3 days weekly) with a goal to reduce the stress and
> to develop healthier living habits.

(Compl. ¶ 34.) Drawing all reasonable inferences in Plaintiff's favor, see Trs. of Upstate N.Y.

Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016), the court concludes

that the Complaint implies that the doctor's order that Plaintiff reduce her work schedule was at

least partially linked to her diabetes diagnosis. That Plaintiff's doctor allegedly ordered her to

cut back on her work schedule "with a goal to reduce [her] stress" and to promote "healthier

living habits" does not mean that this order was unrelated to her diabetes. Stress and some

"[un]health[y] living habits" may cause or aggravate diabetes, see Cathy Lloyd et al., Stress and

Diabetes: A Review of the Links, 18 Diabetes Spectrum 121 (2005), so it is reasonable to infer

that her doctor's suggestion that she reduce stress and improve her lifestyle was related to the

management of her diabetes. Accordingly, the court concludes that Plaintiff has adequately

alleged that she was disabled for purposes of the ADA.

### b. *Causation*

Plaintiff's ADA disability-discrimination claim founders, however, with respect to

causation. "To state a claim for discrimination under the ADA, a plaintiff must allege facts

which plausibly suggest, inter alia, that she 'suffered [an] adverse employment action because of

[her] disability.'" Giambattista v. Am. Airlines, Inc., 584 F. App'x 23, 25 (2d Cir. 2014)

(summary order) (alterations in original) (quoting Giordano v. City of New York, 274 F.3d 740,

747 (2d Cir. 2001)). This standard is easy to meet: To defeat a motion to dismiss, a plaintiff

need only allege facts that "give plausible support to a minimal inference of discriminatory

motivation." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015) (Title

VII); Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 22 (2d Cir. 2015) (summary order)

(applying Vega to ADA discrimination claims).

To raise such an inference, Plaintiff relies exclusively on the temporal proximity between when she informed Karikari and Victory of her diabetes and her related need to cut back her work schedule and when she was fired. (Compl. ¶¶ 34-35; Pl. Opp'n at 13.) Allegations of close temporal proximity between disclosure of a disability and an adverse employment event can raise an inference of discrimination sufficient to withstand a motion to dismiss or to satisfy a plaintiff's burden of making out a prima facie case at the first step of the McDonnell Douglass framework, provided that the alleged temporal proximity is "very close." Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)); see Kelly v. N. Shore-Long Island Jewish Health Sys., 166 F. Supp. 3d 274, 286-87 (E.D.N.Y. 2016); Baron v. Advanced Asset & Prop. Mgmt. Sols., LLC, 15 F. Supp. 3d 274, 283 (E.D.N.Y. 2014); see also Karatzas v. Herricks Union Free Sch. Dist., No. 15-CV-2888 (ADS), 2017 WL 3084409, at *15 (E.D.N.Y. July 18, 2017) (collecting cases).[3] Here, the allegations of temporal proximity are easily close enough to raise an inference of discrimination: Plaintiff alleges that she disclosed her disability in early September and learned on October 1 that Merrick intended to fire her. (Compl. ¶¶ 34-35; Pl. Opp'n at 13.) Courts routinely allow discriminatory or retaliatory intent to be inferred from similar or slightly longer gaps. See, e.g., Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) ("a few months"); Baron, 15 F. Supp. 3d at 283 ("approximately 5-6 weeks"); Primmer v. CBS Studios, Inc., 667 F. Supp. 2d 248, 253-54, 260 (S.D.N.Y. 2009) (one to two months); Cormier v. City of Meriden, 420 F. Supp. 2d 11, 21-22 (D. Conn. 2006) ("a few months"); Constance v. Pepsi Bottling Co. of N.Y., No. 03-CV-5009 (CBA), 2007 WL 2460688, at *35 (E.D.N.Y. Aug. 24, 2007) ("one

---

[3] Temporal proximity alone is, however, insufficient to withstand a motion for summary judgment, provided that the defendant has articulated one or more legitimate, non-discriminatory or non-retaliatory reasons for the adverse employment action. Trent v. Town of Brookhaven, 966 F. Supp. 2d 196, 206-07 (E.D.N.Y. 2013).

13

month gap" and "two month gap"). The Complaint thus provides "at least minimal support for the proposition that [Merrick] was motivated by discriminatory intent." Vega, 801 F.3d at 85.

Unfortunately for Plaintiff, however, the Complaint is not limited to these allegations. Plaintiff's prolix and frequently hard-to-follow pleading is not only replete with extraneous allegations irrelevant to her claims ("factual background information that may be considered superfluous," as she puts it (Pl. Opp'n at 6-7)), but also with allegations that actually undermine the inference that she was fired for discriminatory reasons.[4]

First, to the extent the Complaint relates ad nauseum the history of the "power struggle" for control of Merrick's administration and Board, and how Plaintiff found herself on the losing end of that struggle, it reveals an obvious alternative explanation for her termination—namely, that she was unable to get along with her coworkers, and in particular with Johnson, whom the Board promoted to principal in May 2013. See L-7 Designs, 647 F.3d at 430 (existence of obvious alternative explanations can render inferences sought by Plaintiff unreasonable).

Second, and more importantly, the Complaint shows that Plaintiff was already subject to disciplinary action and at risk of losing her job because she disclosed her disability. While "[i]t is, of course, true that temporal proximity can demonstrate a causal nexus," Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001), temporal proximity "alone is not enough to give rise to an inference of discrimination when gradual adverse job actions began well before

---

[4] The court observes that the Complaint appears to have been either drafted by Plaintiff herself or hastily adapted from a statement she authored, as it frequently refers to her in the first person. (See, e.g., Compl. ¶ 23 ("my role in Operations"); id. ¶ 26 ("my former colleague"); id. ¶ 27 ("She was leaving a charter school that was in trouble and held a higher title than Plaintiff held but was coming to Merrick to work under me?"); id. ¶ 29 ("respected my position").) The possibility that the Complaint was largely drafted by a non-lawyer does much to explain why it alleges so many extraneous facts that tend to undermine her claims. Nevertheless, because Plaintiff is represented by counsel (who signed the Complaint), the court is under no obligation to construe her pleadings liberally, as would be true had Plaintiff simply appeared pro se. Stukes v. City of New York, No. 13-CV-6166 (NGG), 2015 WL 1246542, at *2 (E.D.N.Y. Mar. 17, 2015).

the plaintiff became disabled," <u>McDonnell v. Schindler Elevator Corp.</u>, No. 12-CV-4614 (VEC),

2014 WL 3512772, at *5 (S.D.N.Y. July 16, 2014) (citing <u>Slattery</u>, 248 F.3d at 95); <u>see also</u>

<u>Chamberlin v. Principi</u>, 247 F. App'x 251, 254 (2d Cir. 2007) (summary order); <u>Catanzaro v.</u>

<u>City of New York</u>, No. 10-CV-1825 (JSR), 2011 WL 335648, at *7 (S.D.N.Y. Jan. 25, 2011)

(plaintiff cannot rely exclusively on temporal proximity to raise inference of retaliatory intent

where he was "demonstrably at risk" of adverse action prior to engaging in protected activity);

<u>Williams v. City Univ. of N.Y., Brooklyn Coll.</u>, No. 10-CV-2127 (CBA), 2011 WL 6934755, at

*7 (E.D.N.Y. Dec. 30, 2011) (same).

      The Complaint makes it obvious that Plaintiff was subject to disciplinary action, and that

her position was demonstrably at risk, well before she disclosed her disability.  It alleges that

Board members had taken her to task for work-related conduct, including by "berat[ing]" her and

"suggest[ing] that she was incompetent." (Compl. ¶¶ 23, 27.)  It alleges that in March 2013—six

months before she informed Merrick of her diagnosis—she was already worried that Merrick

was considering replacing her.  (<u>Id.</u> ¶ 27.)  Most significantly, it affirmatively alleges that, late in

the spring of 2013, Plaintiff fired two of her subordinates, one of whom told the Board that

"there was a major glitch in the school's lottery," that the glitch was Plaintiff's fault, and that

Plaintiff had attempted to cover it up by firing her.  (<u>Id.</u> ¶ 30.)  These allegations "prompted the

Board to request an investigation by the school's outside attorney" and to reinstate the

complaining subordinate.  (<u>Id.</u>)  In these circumstances, Plaintiff's allegations of close temporal

proximity are by themselves insufficient to raise a plausible inference that Merrick fired her

because of her disability.  <u>See Yeger v. Inst. of Culinary Educ., Inc.</u>, No. 14-CV-8202 (LTS),

2017 WL 377936, at *16 (S.D.N.Y. Jan. 25, 2017) (no inference of retaliatory intent where

adverse employment actions "were part of a sustained progression of performance critiques and

discussions, as well as re-organization of Plaintiff's role—all of which began many months (and even several years) prior to" the purported protected conduct).

Plaintiff admits that the lottery investigation predated her diagnosis with diabetes, but she contends that there is still a "question of fact," requiring discovery, as to whether the investigation was conducted in a biased or unfair manner or marred by "factual inaccuracies." (Pl. Opp'n at 12-13.) Whether the investigation was in some sense unfair is, however, irrelevant to her ADA claim, which turns on whether the decision to terminate her was motivated by unlawful discrimination. It is not plausible that Merrick launched an investigation into Plaintiff's involvement in the student enrollment lottery mishap as smokescreen for firing her because of her disability when, by her own account, the investigation began before it learned that she had diabetes. Lastly, Plaintiff contends that Merrick might have decided to impose some less serious sanction on her for her involvement in the student enrollment lottery had it not known that she was disabled. (Id. at 12.) Such speculation, by itself, is insufficient to withstand a motion to dismiss. If it were, then allegations of temporal proximity would <u>always</u> be enough to raise a plausible inference of discriminatory intent, notwithstanding that the plaintiff's protected activity or disclosure of her disability postdated "gradual adverse job actions" or indications that the plaintiff's position was "demonstrably at risk." Plaintiff cites no authority, nor is the court aware of any, so holding.

While Plaintiff's allegations of temporal proximity presumably would have been enough to plead a causal nexus between her disability and her termination, Plaintiff has undermined her own cause by alleging facts that refute any inference of discrimination. Judge Posner summed up this problem for the Seventh Circuit:

> [A] plaintiff can plead himself out of court by alleging facts which
> show that he has no claim, even though he was not required to allege

> those facts. Allegations in a complaint are binding admissions, and
> admissions can of course admit the admitter to the exit from the
> federal courthouse. We have expressed our puzzlement that lawyers
> insist on risking dismissal by filing prolix complaints. But nothing
> in the federal rules forbids the filing of prolix complaints. If
> plaintiffs' lawyers want to live dangerously—or want to find out
> sooner rather than later whether they have a claim—they can.

Jackson v. Marion County, 66 F.3d 151, 153-54 (7th Cir. 1995) (internal quotation marks and

citations omitted); see also Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 456

(S.D.N.Y. 2013) (noting that "[i]n a vacuum, this temporal proximity might support that a causal

nexus existed between [plaintiff's protected activity and her] termination," but that other factual

allegations undermined the existence of such an inference).

Accordingly, Merrick's motion to dismiss her ADA discrimination claim is GRANTED.[5]

### 2. Title VII—Retaliation

Plaintiff also alleges that Defendants unlawfully retaliated against her in violation of Title

VII. (Compl. ¶¶ 48-52.) This claim is also unavailing, for substantially the same reasons given

above with respect to her ADA discrimination claim.

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that

would tend to show that: (1) she participated in a protected activity known to the defendant; (2)

---

[5] Out of an apparent abundance of caution, Merrick also argues that the court should dismiss Plaintiff's ADA discrimination claim to the extent that claim is based on a hostile-work-environment theory. (Def. Mem. at 20-21.) The court agrees. Assuming that a hostile-work-environment claim is cognizable under the ADA (an open question in this circuit, see Flieger v. E. Suffolk BOCES, 693 F. App'x 14, 19 (2d Cir. 2017) (summary order)), the court cannot discern such a theory from the Complaint, which alleges that Defendants acted in a discriminatory manner "[i]n unlawfully terminating [her]." (Compl. ¶ 37.) Because Plaintiff is represented by counsel, the court need not construe her Complaint liberally in her favor, as would be the case were she appearing pro se. Even if the Complaint could be read as asserting a hostile-work-environment claim under the ADA, Plaintiff has waived such claim by failing to offer any argument in response to Merrick's arguments for its dismissal. (Compare Def. Mem. at 21, with Pl. Opp'n.) See Frey v. Bekins Van Lines, Inc., 748 F. Supp. 2d 176, 182 (E.D.N.Y. 2010). Moreover, even if Plaintiff had asserted and preserved this claim, she has failed to allege any facts suggesting "that discriminatory harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and that a specific basis exists for imputing the objectionable conduct to [Merrick]." Flieger, 693 F. App'x at 19 (emphasis added) (quoting Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015)).

the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane, 508 F.3d at 115; see also Moy v. Perez, — F. App'x —, 2017 WL 4534777, at *1 (2d Cir. 2017) (summary order) (restating this standard as a four-part test). Merrick challenges the sufficiency of Plaintiff's Title VII retaliation claim on both the first and third prongs, arguing that Plaintiff has failed to sufficiently allege that she engaged in "protected activity" or that there was any causal connection between the protected activity and her termination. (Def. Mem. at 21-23.) Even assuming that the Complaint adequately alleges that Plaintiff engaged in "protected activity," for purposes of Title VII, it fails to raise a reasonable inference that Merrick fired her because of this activity.

### a. Protected Activity

Section 704(a) of Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).[6] To warrant protection from retaliation under this clause, a plaintiff "need not show that the behavior he opposed in fact violated Title VII; he must, however, show that he 'possessed a good faith, reasonable belief' that the employer's conduct qualified as an 'unlawful employment practice' under the statute." Cooper v. N.Y. State Dep't of Labor, 819 F.3d 678, 680-81 (2d Cir. 2016) (first quoting Summa v. Hofstra Univ., 708 F.3d 115, 126 (2d Cir. 2013), and then quoting 42 U.S.C. § 2000e-3(a)). The reasonableness of such a belief is evaluated using an objective standard, "from the perspective of a reasonable similarly

---

[6] This section also prohibits retaliation against certain individuals "because [they have] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). This case implicates only Section 704's "opposition clause," however, not its "participation clause." Littlejohn v. City of New York, 795 F.3d 297, 316 (2d Cir. 2015).

situated person." Id. (quoting Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013)). "[M]ere subjective good faith belief is insufficient," however. Kelly, 716 F.3d at 16. "[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." Vega, 801 F.3d at 90.

Plaintiff's view of "protected activity" sweeps far too broadly. The Complaint alleges that Defendants retaliated against her "for expressing concerns about improper and/or possible illegal activity as an HR Professional." (Compl. ¶ 49.) Her Opposition to Merrick's Motion to Dismiss further explains that her supposed protected activity "was to express her concern about Human Resources issues and misconduct of her c-workers [sic], and to discipline subordinates when warranted." (Pl. Opp'n at 14.) Title VII prohibits, among other things, employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. It does not shield Plaintiff from being retaliated against because, for example, she complained that Johnson and Williams allegedly misused school resources, entered the school through the wrong door, and fostered a "divisive" work environment. (Compl. ¶¶ 19, 27, 29.) Nor does Title VII protect Plaintiff from retaliation for firing her subordinates because they "kept trouble brewing in the department." (Id. ¶ 29.) To the extent Plaintiff argues that such activities are protected by Title VII, her arguments are frivolous, and there can be no objectively reasonable, good-faith belief that such conduct was protected activity.

The Complaint does, however, identify one instance in which Plaintiff's complaints about "Human Resources issues" and coworkers' misconduct might constitute protected activity: her report to Karikari and Victory Education Partners CEO James Stovall that, according to Dhall,

19

Johnson had allegedly referred to Karikari as a "smelly African" and Hanton as a "f------ faggot." (Compl. ¶ 32.) These complaints are within the scope of the Complaint's allegation of "improper and/or possible illegal activity as an HR professional." (Id. ¶ 49.) In her Complaint, Plaintiff describes these as "discriminatory remarks" and alleges that her "understanding of employment laws and workplace policies made this a priority to get addressed." (Id.) Plaintiff could have had a "good faith, reasonable belief" that these alleged comments amounted to race- and gender-based discrimination under Title VII regardless of whether they were ultimately so severe or pervasive as to create a hostile work environment for Johnson's subordinates. "The test for whether someone has 'a good faith, reasonable belief' that the underlying complained of conduct violated the law does not turn on whether the conduct was ultimately 'severe or pervasive' enough to constitute a violation of Title VII. La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 212 (2d Cir. 2010) (summary order) (reversing district court order that was based on erroneous conclusion that plaintiff could not maintain a retaliation claim because "he could not have reasonably believed that two isolated incidents of race-based comments, occurring more than seven months apart, could constitute misconduct that was severe or pervasive" (internal quotation marks and citation omitted)). The court need not ultimately decide, however, whether Plaintiff's reporting of these slurs to Karikari and Victory constituted "protected activity," because she has not sufficiently alleged that Merrick fired her because of this activity.

### b. Causation

To make out a Title VII claim, a plaintiff must allege facts raising a plausible inference that her protected activity was the "but-for" cause of her termination. Vega, 801 F.3d at 91. A plaintiff may raise such an inference through allegations of temporal proximity. Cf. Kwan v.

Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the prima facie stage . . . indirectly through temporal proximity."). "Thus, causality can be supported, especially at the motion to dismiss stage, by pointing to a close temporal connection between protected activity and the alleged adverse action." Lockwood v. Town of Hempstead, No. 16-CV-3756 (SJF), 2017 WL 758491, at *7 (E.D.N.Y. Jan. 3, 2017). But "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery, 248 F.3d at 95.

Plaintiff has not alleged sufficient facts to support an inference that Merrick fired her for reporting Johnson's alleged slurs. Like her ADA discrimination claim, Plaintiff's Title VII retaliation claim relies solely on allegations of temporal proximity to raise an inference that her reporting and termination were causally related. Although it is not entirely clear from the Complaint, it appears that she reported these slurs sometime in August and that she was fired on October 1. (Compl. ¶¶ 32, 35; Pl. Opp'n at 13.) This timing is sufficiently close that, "[i]n a vacuum," these allegations would be sufficient to raise a plausible inference of retaliation. Dabney, 958 F. Supp. 2d at 456. No such inference arises here, however, because, as discussed above, the Complaint makes extensive allegations that both (1) suggest an obvious alternative explanation for the decision to fire her and (2) make clear that Plaintiff was subject to disciplinary action and demonstrably at risk of losing her job before she engaged in any identifiable protected activity. See Slattery, 248 F.3d at 95. (Compare Compl. ¶ 30, with id. ¶ 32.)

Accordingly, the court GRANTS Merrick's motion to dismiss Plaintiff's Title VII retaliation claim.

### C. NYSHRL and NYCHRL Claims

In addition to asserting claims for disability-discrimination under the ADA and retaliation under Title VII, Plaintiff asserts parallel claims under the NYSHRL and NYCHRL. (Compl. ¶¶ 41-47 (disability discrimination); id. ¶¶ 53-58 (retaliation).) The court need not address the adequacy of the Complaint with respect to these claims or whether Merrick has waived the opportunity to seek their dismissal by failing to advance any specific argument as to why these claims should be dismissed. See In re OSG Secs. Litig., 12 F. Supp. 3d 622, 633 (S.D.N.Y. 2014) (arguments not made in memorandum of law in support of motion to dismiss are waived). The court has "dismissed all claims over which it has original jurisdiction," and therefore declines to exercise supplemental jurisdiction over Plaintiff's state- and local-law claims. 28 U.S.C. § 1367(c)(3).

## IV.    CONCLUSION

The court GRANTS Merrick's motion to dismiss the Complaint for failure to state a claim and dismisses all claims against Defendants. (Dkt. 13.) This dismissal is without prejudice, as Plaintiff may be able to cure the deficiencies in the Complaint identified by this Memorandum and Order by alleging additional factual material sufficient to raise a plausible inference that her termination was motivated by unlawful discriminatory or retaliatory animus. Accordingly, the court grants Plaintiff leave to file an amended complaint within fourteen days of the entry of this Memorandum and Order. Fed. R. Civ. P. 15(a)(2). If Plaintiff opts not to amend, the court will enter judgment in favor of Defendants and close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     February 27, 2018

NICHOLAS G. GARAUFIS
United States District Judge